**Leslie Dean DeHART, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43943.**

Court of Criminal Appeals of Texas.

June 29, 1971.

———◆———

Kenneth D. DeHart, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Ted Busch, Asst. Dist. Attys., Lubbock, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of murder with malice aforethought; the punishment was assessed by the jury at 99 years in the Department of Corrections.

The sufficiency of the evidence is not challenged.

Leslie Dean DeHart, Sr., father of appellant, died as the result of a gun shot wound inflicted to his face and neck at his home in Houston on November 10, 1969.

William Francis testified that at approximately 5:00 to 5:30 P.M. on November 10, 1969, appellant came to his house and asked to borrow his .22 magnum pistol. He loaned appellant his pistol and some .22 magnum bullets. He later identified the pistol which was recovered from appellant at the time of his arrest as being the same one he had loaned to appellant earlier that day. Norma Jean DeHart, appellant's ex-wife, testified that between 6:00 and 7:00 P.M. on November 10, 1969, she received a telephone call from appellant. As to her conversation with appellant she testified as follows:

> "He told me he had shot his daddy and killed him. I didn't believe him. I kept on telling him that I didn't believe. I asked him what was the matter with him, because he was real upset. He kept saying over and over that he shot his daddy, that he killed his daddy. I got him to calm down a little bit. Then he told me that he shot his daddy over at his mother's. He didn't know where he was. He left. That is all he would say."

Charles Kent, an arson investigator with the Houston Fire Department, testified that sometime around 8:30 P.M. on November 10, 1969, he learned about the shooting of the deceased and received a description of the automobile appellant was driving. Sometime later, Kent spotted appellant's automobile and followed it until appellant turned around and pulled up beside Kent's vehicle and asked what the "G— d— h—" Kent wanted. Kent replied that he was a police officer and wanted to see appellant's driver's license. Appellant replied "h—," put his car in gear and took off at a high rate of speed. Kent chased appellant's automobile at speeds up to 80 miles per hour until appellant abandoned the car in a yard near a railroad track.

Officer W. E. Reed, of the Houston Police Department, testified that after talking to Houston arson investigators at the place where appellant had abandoned his automobile, he put out a broadcast over his two-way police radio that appellant was armed and last seen going down a railroad track toward Enid Street.

Officer S. M. Nuchia, of the Houston Police Department, made the initial investigation of the shooting. Approximately three hours after his initial investigation, he went to a residence on Enid Street approximately ten miles from the scene, and knocked on the door, which appellant opened. Apparently, appellant had been

taking a shower, since he was nude although he had a towel in his right hand and a pistol in his left hand. Nuchia pointed a 12-gauge shotgun at appellant, told him he was under arrest, to put his hands up, and to drop the gun. The pistol, a six shot .22 magnum, was loaded with five live bullets and one empty shell. Appellant dropped the pistol and asked if he could get dressed. Officer Nuchia accompanied appellant to a bedroom and asked him if he realized that his father was dead, whereupon appellant replied: "Yes, I know. I only wish it had been my mother."

The sole ground of error relates to the trial court's admission of appellant's oral statement to Officer Nuchia that he knew his father was dead and wished it had been his mother, on the ground that such statement was hearsay. The following is reflected from the record:

"Q. What did you do after you picked up the pistol that the Defendant had dropped out there?

"A. I had already told the Defendant that he was under arrest. He asked if I would let him get dressed first. I told him I would. We then walked into the bedroom which was adjoining the hallway that the front door was connected to.

"Q. All right. At that time did you say anything to the Defendant?

"A. I asked the Defendant if he realized that his daddy—as I called him—was dead.

"Q. Did you have any response?

"A. Yes, sir.

"MR. DE HART (Defense Council): We object. It is hearsay.

"THE COURT: Overruled.

"Q. (By Prosecutor) You may answer what his response was to your statement.

"A. (By Witness) He said, 'Yes, I know. I only wish it had been my mother.'"

On cross-examination, the following testimony was elicited:

"Q. Are you sure about the statements he made concerning the matter? Are you sure those were his exact words?

"A. Yes, sir.

"Q. Do you recall that from the scene?

"A. Yes, sir. I do.

"Q. Did you place that in your report?

"A. Yes, sir. I did.

"Q. Are you sure that statement was made in the bedroom?

"A. Yes, sir. I am certain.

"Q. Did you or the other officer ask him if he wished to shoot his mother?

"A. No, we didn't. All I said, 'You know your daddy is dead, don't you?'

"Q. You didn't phrase that statement for his response?

"A. No sir. Not at all."

In view of the fact that the statement was made immediately after arrest and was a spontaneous, non-responsive answer to Officer Nuchia's question, it was res gestae of the arrest. Art. 38.22, Sec. 1(f) Vernon's Ann.C.C.P. Tilley v. State, Tex.Cr. App., 462 S.W.2d 594; Wright v. State, Tex.Cr.App., 440 S.W.2d 646; Moore v. State, Tex.Cr.App., 440 S.W.2d 643.

There being no reversible error, the judgment is affirmed.