Tommy Lee BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 44488.

Court of Criminal Appeals of Texas.

Feb. 16, 1972.

Rehearing Denied April 5, 1972.

Melvyn Carson Bruder, Dallas (on appeal only), for appellant.

Henry Wade, Dist. Atty., John B. Tolle and Edgar A. Mason, Asst. Dist. Attys., Dallas, and Jim Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder with malice. Trial was before a jury, which assessed punishment at life imprisonment.

On the morning of September 26, 1968, the appellant, after having called his wife (the deceased) by telephone, went to her place of employment, a picture framing shop, in the city of Dallas. Upon arriving, he asked to see his wife. She emerged from the rear of the store and the two of them then went back to the rear of the store. A conversation between the two was then overheard by the other employees in the shop. Soon thereafter, the other employees heard three or four shots. The police and an ambulance were called. Upon arriving at the scene, a Dallas police officer found appellant

and his wife lying on the floor in the rear of the store. At this time the deceased was still alive, although both she and appellant were suffering from gunshot wounds. At this time appellant stated, "Oh Bobby, I loved you, but you were trying to take by baby away from me and I killed you. Officer, shoot me, too. You might just as well shoot me, too." Appellant's wife was taken by ambulance to Parkland Hospital, in Dallas, where she was pronounced "dead on arrival." Medical testimony indicated that death was caused by gunshot wounds.

Appellant raises six grounds of error in his brief and three additional grounds in a supplemental brief.

Appellant contends in his first ground of error that the trial court improperly permitted the State to cross-examine one of his character witnesses in regard to prior acts of misconduct and a prior conviction for driving while intoxicated, a crime not involving moral turpitude.

The record reflects that prior to the cross-examination, the witness had testified that appellant's reputation for telling the truth was good and that he had a reputation for being a peaceful person. On cross-examination, the State inquired as to whether the witness had *heard* that appellant had, in the past, threatened to kill his wife. The witness was also asked if he had *heard* that appellant had beaten his wife, if he had *heard* that appellant had been convicted of driving while intoxicated.

The general rule is that, as part of its cross-examination, the State is permitted to ask the character witness if he has heard of a specific act of misconduct. However, the State may not ask whether the witness had personal knowledge of the act, nor may the question be framed so as to imply that the act has actually been committed.[1] The State, as a prerequisite

---

1. Pitcock v. State, 168 Tex.Cr.R. 204, 324 S.W.2d 855 (1959); Ayers v. State, 162 Tex.Cr.R. 586, 288 S.W.2d 511 (1956); Wiley v. State, 153 Tex.Cr.R. 370, 220 S.W.2d 172 (1949).

for asking the question, must have a good faith belief that the act actually occurred. Hart v. State, 447 S.W.2d 944 (Tex.Cr. App.1970); Stewart v. State, 148 Tex.Cr. R. 480, 188 S.W.2d 167 (1945).

■ That the act of misconduct did not involve moral turpitude is not objectionable. Stewart v. State, 148 Tex.Cr.R. 480, 188 S.W.2d 167 (1945); Williamson v. State, 74 Tex.Cr.R. 289, 167 S.W. 360 (1914). The only requirement is that the act be inconsistent with the character trait about which the witness has testified. See Pace v. State, 398 S.W.2d 123 (Tex.Cr. App.1965).

■ The rationale behind the rule is that reputation is an opinion based on hearsay. The reputation witness states his opinion based on that which he has heard from others concerning the defendant. In order to test this opinion, the prosecution is allowed to determine whether the witness has *heard* (not whether he *knows*) of acts or reports which would be inconsistent with a good reputation. The theory is that if the witness is truly familiar with the reputation of the defendant, he will have also heard of adverse reports which are circulating in the community. This is consistent with the nature of reputation evidence, that is, an opinion based on hearsay. Reputation does not concern that which a person *is*, but rather, that which he is thought to be. Thus, a question regarding an act of misconduct which, by its very nature, is likely to be a part of the person's reputation in the community, is appropriate as a means of testing the weight or credibility of the witness' opinion. Morton v. State, 460 S.W.2d 917 (Tex.Cr.App.1970); Smith v. State, 411 S.W.2d 548 (Tex.Cr.App.1967); McNaulty v. State, 138 Tex.Cr.R. 317, 135 S.W.2d 987 (1939).

The requirement in this State is that the question be phrased "have you heard" that the defendant committed a certain act? If the question is phrased "do you know" or if it is phrased in such a way as to im-

ply that the act was actually committed, then the question is improper. If the witness is asked if he knows that a certain act was committed, and he answers that he does, then he has testified that the act was committed, which would be improper. Ayers v. State, 162 Tex.Cr.R. 586, 288 S.W.2d 511 (1956); Wiley v. State, 153 Tex.Cr.R. 370, 220 S.W.2d 172 (1949); McNaulty v. State, 138 Tex.Cr.R. 317, 135 S.W.2d 987 (1939).

■ It should be kept in mind that the purpose of the cross-examination is not to discredit the person on whose behalf the witness is testifying, but rather, the purpose is to affect the weight of the witness' testimony. Kennedy v. State, 150 Tex.Cr. R. 215, 200 S.W.2d 400 (1947); Taliaferro v. State, 143 Tex.Cr.R. 243, 158 S.W.2d 493 (1942); Thompson v. State, 138 Tex. Cr.R. 491, 136 S.W.2d 840 (1940). Thus, since reputation is based on hearsay, an examination as to whether the witness has heard hearsay inconsistent with his opinion is proper. That the questions are leading is not objectionable, since leading questions are a characteristic of cross-examination. There is, of course, a risk inherent in the case of any leading question: namely, that the jury will consider the content of the question as substantive evidence. Recognizing this risk, this Court, as discussed earlier, has restricted the form the question may take. Also, in light of the danger involved in asking such a question, it would be quite proper for the trial court, if requested, to give a limiting instruction to the jury to the effect that the questions are not to be considered as substantive evidence, and that only the credibility of the witness, and not the credibility of the defendant is being called into question.

■ In the instant case, we see no error. The witness had previously testified as to appellant's good reputation. The prosecutor's questions were phrased "have you heard" and did not imply that the acts had actually been committed.

In his second ground of error, appellant contends that the trial court improperly limited appellant's inquiry into the character of the deceased, in violation of Articles 1257a and 1258, Vernon's Ann.P.C. The record reflects that appellant called a witness, James Alexander, who testified that he was familiar with the deceased's character. However, he was not allowed to answer as to whether her character was good or bad.

Article 1258, V.A.P.C., provides in part:

"In every instance where proof of threats has been made, it shall be competent to introduce evidence of the general character of the deceased."

In the instant case, the record is bare as to evidence of any threat made to him by the deceased, nor does the record reflect any evidence that the deceased had done any act which would have justified the killing. In light of the absence of any evidence of threats, Article 1258 is not applicable. Mahaffey v. State, 471 S.W.2d 801 (Tex.Cr.App.1971); see also DeVoyle v. State, 471 S.W.2d 77 (Tex.Cr.App.1971). Likewise, the trial court did not exclude relevant evidence which was admissible under Art. 1257a. Appellant had testified regarding his marital difficulties, and testified that his wife had told him shortly before the shooting, that he was not the father of his youngest child. Appellant contends that evidence of the deceased's character was relevant under Article 1257a, V.A.P.C., and was improperly excluded. The character of the deceased is not relevant unless it explains some act on the part of the deceased which would serve as a defense for the accused. Horbach v. State, 43 Tex. 242 (1875). In the instant case, there is no evidence of any such act. The appellant did not claim self-defense. He contends, however, that since both parties were wounded, that self-defense *might* have been the motive for the killing. Unless evidence appeared in the record, this Court cannot and will not supply it by conjecture. Appellant's second ground of error is overruled.

Appellant contends that the trial court erred in admitting "prejudicial hearsay." The record reflects that one of the State's witnesses testified that she had, on one occasion, gone to the home of the deceased, and that appellant, prior to her arrival, had beaten the deceased and shot a hole in the ceiling. An objection was made to this testimony. The objection was sustained, and the jury instructed to disregard the testimony about the shooting. Appellant's motion for mistrial was overruled. The witness, later in her testimony, stated that she saw appellant beat the deceased after she arrived. The record reflects that later in the trial, appellant took the stand in his own behalf. On cross-examination, he testified in regard to the occasion, previously mentioned, concerning the shot fired into the ceiling. No objection was taken to this testimony. The appellant's later testimony to the same effect as the hearsay cured the error, if any, e. g., Morales v. State, 466 S.W.2d 293 (Tex.Cr.App.1971); Glenn v. State, 465 S.W.2d 371 (Tex.Cr.App.1971); Arreguin v. State, 463 S.W.2d 729 (Tex.Cr.App.1970); Hoover v. State, 449 S.W.2d 60 (Tex.Cr.App. 1969). Appellant's third ground of error is overruled.

Appellant complains in his fourth ground of error of certain arguments of the prosecutor. It appears that the prosecutor called him "a big tough guy, with a gun in his hands," and "a big tough guy." Appellant's objection was overruled. The prosecutor also addressed the appellant during argument and stated, "[w]ith a .38 caliber snub nose pistol like this he could have put that thing right there to his head and blown his brains out. If you wanted to kill yourself and you were blacked out, you are too smart for that, Tommy." Appellant's objection was overruled.

We do not feel that the statement referring to appellant as "a big tough guy" was so prejudicial as to require reversal. In fact, in light of the evidence it seems warranted. See Lott v. State, 164 Tex.Cr. R. 395, 299 S.W.2d 145 (1957); Christes-

son v. State, 172 Tex.Cr.R. 27, 353 S.W.2d 28 (1962); Miller v. State, 163 Tex.Cr.R. 381, 292 S.W.2d 108 (1956).

The prosecutor's remarks to appellant, while not proper, were not of such nature as to require reversal. The same argument, in light of appellant's testimony that he had previously attempted suicide, but had failed, but that he did not remember the killing or the circumstances surrounding it, would have been proper if directed to the jury. We see no prejudicial harm in directing the remark to appellant. Appellant's fourth ground of error is overruled.

Appellant complains in his fifth ground of error of a remark by the prosecutor which he contends was a comment on his right to object. The record reflects that one of the State's witnesses was asked if the deceased had received a telephone call before appellant came to her place of employment. The witness answered "Yes." At that time, appellant objected to any testimony which might be elicited in regard to the conversation which was had on the telephone. The court did not rule on this objection at that time. Then, the prosecutor asked the witness if she had seen the deceased go to the phone, and whether she had seen her talk on the phone. The witness answered affirmatively. At this time the court announced "objection overruled." The prosecutor then stated, "Of course we can't go into her conversation, that would be hearsay and we would get an objection from Mr. Green." Appellant promptly objected to this remark, and the objection was sustained. No further relief was requested.

We perceive no error. Appellant was given all the relief which he requested. Moon v. State, 465 S.W.2d 172 (Tex.Cr. App.1971); Jenkins v. State, 435 S.W.2d 505 (Tex.Cr.App.1968).

Appellant contends in his sixth ground of error that the trial court erred in admitting his oral statement which was made at the time a police officer arrived upon the scene of the crime. The officer testified that, when he arrived, he found the deceased and the appellant on the floor, in a pool of blood. At that time appellant stated "Oh Bobby, I loved you, but you were trying to take my baby away from me and I killed you.", and "You might just as well shoot me, too." Appellant contends that since he was in custody at the time, this statement was not admissible because he had not been warned pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Art. 38.22, Vernon's Ann.C.C.P.

Art. 38.22, subd. 1(f) provides that the Article does not preclude statements which are part of the res gestae. In the instant case, the exclamation was spontaneous, and since the appellant was seated in a pool of blood, in the presence of his wounded wife, we may safely infer that the statement was made while appellant was under the influence of the startling event. It is clearly admissible under the "res gestae" or spontaneous utterance exception to the hearsay rule. See McCormick & Ray, Texas Law of Evidence, § 911–926, and VI Wigmore, Evidence, § 1746–1757; Smith v. State, 474 S.W.2d 486 (Tex.Cr.App.1971); DeHart v. State, 468 S.W.2d 435 (Tex.Cr.App.1971); Fisk v. State, 432 S.W.2d 912 (Tex.Cr.App.1968). Statements admissible under this exception are not made inadmissible by the failure to give statutory warnings. Art. 38.22, subd. 1(f), V.A.C.C.P.; Smith v. State, supra; Jones v. State, 458 S.W.2d 654 (Tex.Cr. App.1970); Fisk v. State, supra; Ramos v. State, 419 S.W.2d 359 (Tex.Cr.App.1967). Appellant's sixth ground of error is overruled.

We now turn to the grounds of error contained in appellant's supplemental brief. Appellant contends in his first ground of error that the conviction was based upon perjured testimony. This ground of error, if meritorious, would necessitate a reversal.

In support of his claim, appellant maintains that Mrs. Watson, one of the State's witnesses, first testified that no one saw what happened in the back room of the store, but then testified that she saw appellant shoot the deceased. Upon examining the record, we find that such is not the case. Mrs. Watson testified that she did not see the couple when they went to the back room. She then testified that she saw appellant's arm being raised. She stated that she didn't see a gun. She did not state that she saw appellant fire. Appellant also states that she gave conflicting testimony as to whether appellant was wounded when she entered the back room. The record indicates that she testified that appellant was lying on his side next to the deceased. She later testified on cross-examination that she could not tell whether appellant or the deceased was bleeding, but that there was blood on both of them. The conflict to which appellant refers was in the questions asked by his counsel, when he asked the witness if she saw blood flowing from appellant. She stated that she did not see it coming from him. This was consistent with her prior testimony that she could not tell which person was bleeding.

Appellant also contends that another of the State's witnesses committed perjury because she testified that, on a prior occasion, appellant beat the deceased in the presence of a policeman. He contends that it is impossible to believe that a policeman would stand idly by while a woman is being assaulted, and therefore the witness committed perjury. The record is silent as to what actions the policeman took, if any. That he stood idly by is conjecture on the part of appellant.

The jury is the exclusive judge of the credibility of the witnesses. Arts. 38.04 and 36.13, V.A.C.C.P.; McCormick & Ray, Texas Law of Evidence, § 3. Although we do not feel that the witnesses gave conflicting testimony, nevertheless, even if they had, that fact alone would not indicate perjury.

Appellant contends in the second ground of error raised in his supplemental brief that the court erred in admitting six spent hulls and a pistol into evidence. He contends that since no ballistics expert testified that the bullets which were found in the deceased's body were fired from the pistol in question, the pistol and shells were irrelevant. We note that the bullets found in the deceased's body, if they were removed, were not offered into evidence, and that no objection on this ground was made in the trial court. Ths pistol was found by the arresting officer at the scene of the crime and was identified by him and the officer who took it from him. In light of the testimony that shots were heard, we perceive no error. This ground of error will not further be reviewed.

Appellant asserts in his third ground of error that he was deprived of a fair trial because counsel was not appointed for him until he had been in custody approximately 44 to 47 days. Appellant correctly points out that the right to counsel applies even at preliminary hearings which are "critical stages." Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). However, in the instant case there is no record of any preliminary proceeding at which appellant was deprived of counsel. He does not allude to any prejudice which he suffered. The record further reflects that appellant called seven witnesses in his behalf. This indicates that he was not hampered in his investigation by his failure to have counsel during the 44 to 47 day period. The record further indicates that counsel was appointed on December 17, 1968. On March 3, 1969, the first counsel was relieved, and appellant's trial counsel was appointed on April 7, 1969. The case came to trial on May 12, 1969. Thus, counsel had ample time to prepare. No error is presented by the record.

The judgment is affirmed.