Donald PEMBERTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 61861.

Court of Criminal Appeals of Texas,
Panel No. 2.

Oct. 24, 1979.

On Rehearing July 16, 1980.

Rehearing Denied Sept. 17, 1980.

Phillip O. Vick, Denton, for appellant.

Jerry Cobb, County Atty. and David Bays, Asst. County Atty., Denton, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from a plea of guilty to the offense of aggravated robbery where the jury assessed punishment at confinement in the Texas Department of Corrections for five years notwithstanding appellant's sworn motion for probation.

At the outset, appellant advances the contention that the trial court erred in permitting the State to ask an improper "have you heard" question while cross-examining one of appellant's reputation witnesses at the punishment stage of the proceedings. Specifically, appellant contends that the question constituted an improper assertion of fact. We agree and accordingly reverse the judgment below.

The improper questions of which appellant makes complaint were asked of one Burl Loving after he had testified, *inter alia*, that appellant had a good reputation in his community as a peaceable and law abiding citizen. On cross-examination, the following colloquies ensued:

Q [By the prosecutor]: Now, I'm going to ask you a question—*I guess you and I both know the answer to this*—have you heard that Donald Pemberton *in fact* is absent without leave from the Army?[1]

[Appellant's counsel]: Your Honor, can I have a running objection to this question that I made earlier?

\* \* \* \* \* \*

THE COURT: I will grant you a running objection to that question.

\* \* \* \* \* \*

Q: All right. Mr. Loving, have you heard that?

A: I did not hear that until I heard it from you yesterday, sir.

Q: That's what I'm saying, you have heard it and I am the one who told you?

A: From you, uh-huh.

Q: *So that makes it true, doesn't it?*

A: (No answer)

\* \* \* \* \* \*

Q: If it were shown to you that *in fact he was absent without leave from the Army*, would that cause you to change your opinion about him?

[Appellant's counsel]: Your Honor—

A: None whatsoever, sir—

[Appellant's counsel]: —I object.

A: —because he was a good worker. Okay?

Appellant's objection was overruled as was his request for a curative instruction to disregard and his motion for a mistrial.

*Moffett v. State*, 555 S.W.2d 437 (Tex.Cr. App.1977) reiterated the holding that:

"    .    .    .    [a]s part of its cross-examination, the State is permitted to ask the character witness if he has heard of a specific act of misconduct. However, the State may not ask whether the witness had personal knowledge of the act, *nor may the question be framed so as to imply that the act has actually been committed.*"

555 S.W.2d at 439, *quoting Brown v. State*, 477 S.W.2d 617, 619 (Tex.Cr.App.1972).

---

1. We also note the doubtful propriety of the subject matter of the questions, pertaining as they do to an alleged offense "peculiar to military law," *Gaines v. State*, 481 S.W.2d 835, 837 (Tex.Cr.App.1972), and that otherwise unobjectionable "have you heard" questions, including one concerning being AWOL, were found in *Pace v. State*, 398 S.W.2d 123, 124 (Tex.Cr. App., on motion for rehearing, 1965) to be "highly prejudicial and tended to deprive appellant of the fair trial that he was entitled to under the Constitution and laws of this State and of the United States." (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

It is clear that the complained of questions fall squarely within the prohibition explained in *Moffett,* supra, as they were undeniably calculated to assert the matter in issue as fact. They are practically identical to the single question found offensive in *Sisson v. State,* 561 S.W.2d 197, 199 (Tex.Cr. App.1978), wherein this Court held that it was error to allow the State to ask a reputation witness:

"Have you heard that on August the 7th, 1976, this Defendant with Randy Walter, Kay Miller and Donna Rana *did in fact,* smoke marihuana together, have your heard that?"

There, as here, the question posed by the prosecutor had the effect of negating the unassertive "have you heard," and replacing it with words asserting the matter as fact. It was, therefore, error to allow the prosecutor to ask the questions referred to above. *Moffett* and *Sisson,* supra; see and compare *Carey v. State,* 537 S.W.2d 757 (Tex.Cr.App. 1976) (objection sustained and lengthy instruction to the jury to disregard given).

The State, however, vigorously contends that appellant waived any error herein under the doctrine of curative admissibility. Succinctly stated, this doctrine holds that admission of improper evidence cannot be urged as grounds for reversal where the accused gives testimony on direct examination that establishes the same facts to which he objected. See, e. g., *Ehrman v. State,* 580 S.W.2d 581 (Tex.Cr.App.1979). It is often added that a corollary to this doctrine is that the harmful effect of improperly admitted evidence is not cured by the fact that the accused sought to meet, destroy, or explain it by the introduction of rebutting evidence. *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr.App.1973).

The State is correct in its contention that appellant testified that he had in fact been absent without leave from the Army and had fully intended to "straighten out this Army problem." Though it might be said that his "explanation" for having been AWOL was an attempt to "meet, destroy, or explain" the erroneously admitted "have you heard" evidence and that he testified only to overcome the impact of the prosecutor's improper questions, cf. *Harrison v.* *United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), this issue can be decided on other independent and adequate grounds.

One exception to the principles previously discussed is that no waiver will be found where a defendant objects to evidence or testimony not tied directly or indirectly to the elements of the case and then in testifying himself admits those facts to be true. *Thomas v. State,* 572 S.W.2d 507, 513 (Tex. Cr.App.1978) (on rehearing). This exception is illustrated by the fact situation in *Alvarez v. State,* 511 S.W.2d 493 (Tex.Cr. App.1973) in which a portion of a confession stating that "I [appellant] always carry a pistol with me because I shot and killed a man in Lubbock not too long ago and I am afraid of his people," was properly objected to as evidence of an extraneous offense. Because this statement involved an extraneous offense which was not evidence tied to the elements of the case but relevant only to show bad character on the part of the defendant, the Court held that the objection proffered was not waived when the defendant took the stand and, attempting to explain the incident, admitted on direct examination that the statement was true.

It is apparent that the reasoning of *Alvarez,* supra, is applicable to the instant case. The testimony which appellant offered on direct examination regarding his status as AWOL *was not* tied directly or indirectly to the elements of the case—indeed he had pled guilty before the jury and the State had rested its case—but was instead in the nature of reputation or character evidence, a purely collateral matter. We therefore hold that the error pointed out was not rendered harmless by appellant's subsequent testimony on direct examination. *Thomas v. State,* supra; *Alvarez v. State,* supra.

The judgment is reversed and the cause remanded.

Before the Court en banc.

## STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

This appeal is from a conviction for aggravated robbery, where following appel-

lant's plea of guilty the jury assessed punishment at five (5) years' confinement in the Department of Corrections.

On original submission, the panel opinion reversed the conviction on the basis of the appellant's first ground of error that the court erred in permitting the State to ask an improper "have you heard" question while cross-examining one of appellant's reputation witnesses. On rehearing, the State contends the panel erred in reversing the conviction. Upon further consideration, we agree and grant the State's motion for rehearing.

Appellant's initial ground of error is that the "trial court committed reversible error by refusing defendant's motion for mistrial when the prosecutor asked a 'have you heard question' that asserted the truth of matter questioned."

Burl Loving testified for the defense that appellant's reputation for being a peaceful and law abiding citizen was good. In his brief, appellant calls our attention to the one question asked which he contends entitled him to a mistrial in view of the objection made. On cross-examination Loving related he had heard that the appellant was absent without leave from the Army because the interrogating prosecutor had told him so the day before. The witness was then asked:

> "Q If it were shown to you that in fact he was absent without leave from the Army, would that cause you to change your opinion about him?
>
> "MR. VICK (Defense Counsel): Your Honor—
>
> "A None whatsoever, sir—
>
> "MR. VICK: —I object.
>
> "A —because he was a good worker. Okay?
>
> "MR. VICK: Excuse me. Your Honor, I will have to object again because that's a different question and that's an

improper phrase of the question and it assumes something as being true, whereas a question is not supposed to, and I would ask the Jury to be instructed to disregard it, and I further move for a mistrial at this time and ask you to instruct the—"

Counsel later repeated "not a proper phrasing" objection. The court then overruled the objection, the motion to instruct the jury to disregard, and the mistrial motion. The question set out above was the only question asked Loving to which the objection, now the basis of the appeal, was made and where a mistrial motion was requested.

To better understand the setting in which the question was asked and the objection made, we must begin with the State's case-in-chief. The record shows that the robbery was committed by a man who had a sawed-off rifle and who was wearing a gorilla mask. John Downey, apparently an uncle of appellant's by marriage, testified for the State that he owned a sawed-off .22 caliber rifle and a gorilla mask and that he had not see such items since July 26, 1978 (the day of the alleged robbery). They were missing from his house. On cross-examination, appellant elicited from his uncle that his (appellant's) reputation for being a peaceful and law-abiding citizen was good. On re-direct examination, Downey was asked, ". . . Have you heard that Donald Pemberton in fact is absent without leave from the Army, have you heard that?" Appellant objected to the question on the ground "as not being a character trait for a peaceful and law-abiding citizen."[1] The objection was overruled. The witness answered the question "No."

After the State rested its case, the appellant called Burl Loving as a reputation witness as noted above. After he testified that appellant's reputation was good, the record on cross-examination shows:

1. See *Pace v. State*, 398 S.W.2d 123, 124 (Tex. Cr.App.1965) (Opinion on Motion for Rehearing); *Gaines v. State*, 481 S.W.2d 835, 837 (Tex.Cr.App.1972). In *Pace* it was held that inquiries made by the State upon cross-examination of character or reputation witnesses at the trial of a defendant for driving while intoxicated as to whether the witness had heard that the defendant was charged with being A.W. O.L. was prejudicial and tended to deprive him of a fair trial.

"Q Now, I'm going to ask you a question—I guess you and I both know the answer to this—have you heard that Donald Pemberton in fact is absent without leave from the Army?

"MR. VICK (Defense Counsel): Your Honor, can I have a running objection to this question that I made earlier?

\* \* \* \* \* \*

"THE COURT: I will grant you a running objection to that question.

\* \* \* \* \* \*

"Q All right. Mr. Loving, have you heard that?

"A I did not hear that until I heard it from you yesterday, sir."

Thereafter, the question about whether the witness would change his opinion and on which the appellant based his ground of error followed as set out in the beginning of this opinion.

█ In *Brown v. State*, 477 S.W.2d 617 (Tex.Cr.App.1972), this court stated the rule for cross-examining reputation witnesses. The State is permitted to ask such witness if he has heard of a specific act of misconduct of the defendant. However, the State may not ask whether the witness has personal knowledge of the act (did you know . . . .?), nor may the question be framed so as to imply that the act has actually been committed—an assertion of the truth of the matter.

█ The first so-called "have you heard" question asked Loving was improper as an assertion of the truth of the matter. The State so concedes. However, the objection to the question was not on that basis. Appellant only asked for a running objection "to this question that I made earlier." The objection taken by itself is a general objection and presents nothing for review. Certainly the question had not been previously asked the witness Loving. If it can be tied into the question asked Downey and the objection then made, it should be observed that such objection was not that the "have you heard" question was improperly phrased as asserting the truth of the matter, but on the basis that "have you heard" questions should not be extended to specific acts of misconduct such as A.W.O.L. See

*Pace v. State,* supra. Thus, the so-called "have you heard" first question directed to Loving was not objected to on the ground now urged on appeal.

We do not understand appellant to contend that the overruling of his objection to the "first" question to Loving calls for reversal. He does not even mention it in his brief. His ground of error is directed to the second question—"If it were shown to you that in fact he was absent without leave from the Army, would that cause you to change your opinion about him?" The form of the question objection was overruled as to this interrogation, as well as the motion for mistrial. It is observed that the question also came after the witness testified he had heard appellant was A.W.O.L. because the prosecutor had so informed him the day before. It did not assert the truth of matter stated. The inquiry was simply if an A.W.O.L. was proven would this change the opinion stated by the witness as to appellant's objection. We cannot characterize the question as a "have you heard" question asserting the truth of an A.W.O.L. or as a "did you know" question. Whatever question of propriety may be raised concerning the interrogation, the objection directed against the particular question is without validity. Appellant's contention is without merit.

█ In his second ground of error, appellant contends the court erred in refusing his motion for mistrial due to improper jury argument by the prosecutor. He contends the prosecutor was arguing outside the record when he stated that officer Danny Cobb had not promised the appellant probation as he (Cobb) knew from dealing with the District Attorney's office that it would not recommend probation.

The record shows that on cross-examination Cobb denied that he had promised appellant probation if he cooperated with the police. Fellow officer Jerry Galler denied on cross-examination that he heard Cobb promise the appellant probation. In his testimony, appellant never claimed he was promised probation by Cobb, but stated he fully cooperated with the police. In his jury argument, appellant's counsel stated:

"I don't think anybody, any witness who got on the stand told you a lie. I just flat don't think so. I don't think a single one for the State or for the Defendant. I think there were some mistakes; one, that Danny Cobb said he didn't tell him that he would get probation. I think Donald remembered that and it's more important to Donald . . ."

Appellant's counsel was in effect asserting that the appellant had testified as to a promise of probation when he had not.

In discussing whether a promise of probation had been made, the prosecutor subsequently stated:

". . . and he knew when the police picked him up, I think he knew in his heart that it was over, that the best thing that he could do would be to cooperate. He tells you that Danny Cobb promised him probation. Danny Cobb told you that he did not promise probation. Danny Cobb would know from his dealings with our office that we would not recommend probation. He testified he made no such promise. It has never been the policy of our office to recommend probation for—

"MR. VICK: Objection, Your Honor, that's outside of the record.

"MR. BAYS (Prosecutor): Your Honor, the Defense Counsel testified outside of the record when he testified to—

"THE COURT: I am going to sustain the objection.

"MR. VICK: Your Honor, we ask—I will ask that the Jury be instructed to disregard it.

"THE COURT: The Jury will be instructed to disregard.

"MR. VICK: And I ask for a mistrial.

"THE COURT: Your mistrial motion is denied in all things."

The State argues that its argument was invited, and that where the defense counsel goes outside the record in argument the prosecutor is permitted to go outside the record in response thereto. *Reynolds v. State*, 505 S.W.2d 265 (Tex.Cr.App.1974). However, such invitation does not grant to the prosecution a license to stray beyond the scope of the invitation. *Kincaid v. State*, 534 S.W.2d 340 (Tex.Cr.App.1976).

Appellant's counsel argued that while officer Cobb had testified he had not promised probation he was mistaken, and going outside the record counsel told the jury that appellant remembered otherwise as it was important to the appellant. He thus sought to discredit Cobb's testimony. In response the prosecutor not only recalled Cobb's testimony, but in order to bolster such testimony, went outside the record to state Cobb knew the policy of the prosecutor's office as to probation and then started to state that policy. It clearly appears that such argument was invited by appellant's counsel and was within the scope of the invitation and pertaining to the same subject matter—the correctness or truthfulness of Cobb's testimony. Even if it could be argued that the prosecutor's argument was not within the scope of the invitation, it is observed that the court sustained appellant's objection to such argument and instructed the jury to disregard the argument. The error, if any, was cured by the action of the trial court. *Bolding v. State*, 493 S.W.2d 181 (Tex.Cr.App.1973). The court did not err in denying the mistrial motion.

State's motion for rehearing is granted. The judgment is affirmed.

ODOM, J., concurs in the result.

CLINTON, Judge, dissenting.

The issue that now divides the Court was, in the collective judgment of members of the unanimous panel opinion, properly raised and correctly decided. In a stout motion for rehearing the State urges it be set aside. I adhere to the analysis, construction and disposition of the matter, and in doing so am fortified by a subsequent unanimous panel opinion written by Judge W. C. Davis in *Maxwell v. State*, 595 S.W.2d 126 (Tex.Cr.App.1980) which successfully withstood an equally insistent motion for rehearing by the State that was denied by the Court March 26, 1980. Rather than characterize or give shorthand renditions of the objectionable exchanges in each case, I simply set them out side-by-side, on the left the instant case and *Maxwell* on the right:

Q: Now, I'm going to ask you a question—I guess you and I both know the answer to this—have you heard that Donald Pemberton *in fact is* absent without leave from the Army?[1]

* * *[2]

Q: All right. Mr. Loving have you heard that?

A: I did not hear that until I heard it from you yesterday, sir.

Q: That's what I'm saying, you have heard it and I am the one who told you?

A: From you, uh-huh.

Q: So that makes it true, doesn't it?

A: (No answer)
* * *

Q: If it were shown to you that in fact he was absent without leave from the Army, would that cause you to change your opinion about him?

* * *[3]

A: None whatsoever, sir . . .

Q: Have you ever heard of that [making threats to prospective witnesses]?

A: I haven't heard of all of it.

Q: Well, you have heard of some of it? You have heard of some of it?

A: Some of it, but it doesn't change my opinion.

Q: Even though he had made these threats it still doesn't change your opinion?

A: No, sir, it does not.

Q: You think he is entitled to threaten witnesses, do you?

A: It does not change my opinion how
* * *

Q: I am asking you to answer my question 'yes' or 'no.' Do you think he is entitled to threaten witnesses?
* * *

A: No, sir.

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. Practically identical phrasing was condemned in *Sisson v. State*, 561 S.W.2d 197, 199 (Tex.Cr. App.1978):

   "Have you heard that on August the 7th, 1976, this Defendant with Randy Walker, Kay Miller and Donna Rana *did in fact*, smoke marihuana together, have you heard that?" (Emphasis in original)

   All agree in the instant case that the content of the "AWOL" question is "highly prejudicial" and tended to deprive appellant of "the fair trial that he was entitled to . . .;" see note 1 in opinion on original submission and note 1 of opinion on State's motion for rehearing. As a matter of law, then, the "AWOL" question is erroneous both in form and substance. When put to Downey, appellant had objected, first outside and then in the presence of the jury, that the question is not "a character trait for a peaceful and law-abiding citizen"—a good objection in light of the teachings of *Pace* and *Gaines*, see notes 1 in the opinions, supra, that the trial court overruled. When Loving was later asked substantially the same question earlier put to Downey, appellant asked for a "running objection to this question that I made earlier," the trial court sought clarification "to know what kind of running objection I am granting," appellant offered to have the court reporter read back "the exact wording," but the trial court satisfied itself that the running objection went to the "have you heard" question that referred to "absent without leave," and granted a running objection to that question.

3. An effort to object was thwarted by the witness answering out, as shown. During the fol-

Taken in context, I am satisfied that every reasonably alert juror hearing the exchange in the instant case, just as in *Maxwell*, would believe that the prosecuting attorney was, indeed, asserting as truth that appellant then and there was absent without leave from the Army. Accordingly, the questioning was improper, just as the panel correctly perceived, and reversal should follow.

Yet, the real vice in the opinion for the Court on rehearing is that it approves a new form of testing the reputation witness that avoids the strictures years of jurisprudence have placed on "have you heard" questions. Thus, the majority would have it that an "if it were shown" question is not objectionable and may be asked to prove credibility of the witness as to his opinion of the reputation of the accused. It is specious to claim that such an inquiry put to a witness in order to effect a change in his opinion as to reputation does not suggest the truth of the matter stated. The preliminary phrase "if it were shown" assumes the truth of the matter that follows by telling the witness, in effect, it is true and the questioner can prove it. Certainly almost any witness and every juror would understand it that way and take the text of the assertion as true.

To the dangerous doctrine about to be espoused to the bench and the bar, in the minds of many of whom the "have you heard" question is already an archaic abomination, I must protest. The State's motion for rehearing should be denied. Because it is not, I respectfully dissent.

ROBERTS, PHILLIPS and W. C. DAVIS, JJ., join.

lowing colloquy, however, appellant asked that the jury be instructed to disregard both the question and "any answer they might have heard." In response the State differentiated between its first "have you heard" question and its next "if it were shown" question; the trial court remarked, "Well, that's the way I basically understood your question," and denied relief.