# OCTOBER 16, 1946

## W. R. BOONE V. THE STATE.

No. 23216. Delivered November 21, 1945.
State's Motion for Rehearing Granted June 26, 1946.
Appellant's Motion for Rehearing Denied October 16, 1946.

The opinion states the case.

*Upton, Upton & Baker* and *B. W. Smith,* all of San Angelo, for appellant.

*R. G. Hughes,* District Attorney, of San Angelo, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was assessed a penalty of five years in the penitentiary on a charge of murder.

The evidence sufficiently supports the jury's verdict. A number of bills of exception are presented for our consideration, some of which will not be discussed for the reason that such complaints will likely not arise on another trial of the case.

In due time the appellant filed an application for a suspended sentence and presented six character witnesses. Each qualified to give evidence on the subject and stated that the accused bore a good reputation. On cross-examination the State sought to prove by each witness that he knew about the murder for which appellant was being tried, and that because of this murder his reputation had not been good after it was committed. Where application is made for suspended sentence it is proper for the State to cross-examine the character witnesses and to inquire of his reputation up to the time of trial, but the State is not permitted to utilize the offense charged in the indictment for the purpose of destroying that reputation. It is very evident what answer the district attorney expected to receive from the witnesses. If he had received the anticipated answer it would have been to the effect that the accused did not bear a good reputation since the commission of the offense for which he was charged. Some of the witnesses probably removed all possible error by their answers, but not so with all of them. The following questions and answers from Bill of Exception No. 4 are typical of others and we think they present error.

"Q: Had you heard about him killing Willis Hawes? A: Yes.

"Q: You still say his reputation for being a peaceful and law abiding citizen is good? A: Yes, his reputation was good.

"Q: Just up to that time is what you mean? A: Yes."

The appellant has filed an exhaustive brief treating many of the decisions of this court on the subject, all of which have been reviewed and considered in this appeal. Likewise, the district attorney has filed a very ingenious brief discussing the authorities and making the contention that there is no error because the answers given by the witnesses do not affirmatively say that his reputation had become bad from and after the murder alleged. This, in our opinion, would be rather a strained construction. A more reasonable view is that the witnesses said it was good up to that time and left an inference, almost as if spoken words, that it was not good thereafter. Even when viewed as the district attorney has presented it, this would result in taking from appellant the evidence concerning his reputation from the time of the killing to the trial. To do so the State would be utilizing the offense for which he was being tried. It was based on the murder as the cause of the end of his good reputation and the beginning of the inferred bad reputation. If one such cross examination is error, the repetitions as found in other bills with other witnesses serve to give emphasis to the fact that the indictment or the circumstances of the homicide were such as to change the attitude of the people in the community. They added fuel to the flame. In addition to the dangers pointed out in Stephens v. State, 80 S. W. (2d) 980, Section 3, we think that it would be bringing into the case evidence of the judgment of the people regarding the very case for which the party was on trial. This would open the door and would be a means by which the State would be able to prove that the people of the community generally viewed the offense with disapproval. The judgment of the people relative to the merits of a transaction is not proper evidence for the consideration of the jury. It requires no serious consideration to see the harmful results from this type of cross-examination of character witnesses.

As observed, there are other bills of exception in the record which we are not discussing for the reason stated. However, it would appear proper to caution against such display of the widow and child of the deceased as indicated by the bills complaining of her presence in the court room. We cannot say that she had no right in the court room, or that the court abused its discretion in permitting her to remain in front of the bar rail. If her presence and her conduct there should be such as might

inflame the minds of the jury it is perfectly reasonable to conclude that it would be error. Our failure to treat the other bills should not be considered as approving all of them.

For the error pointed out, the judgment of the trial court is reversed and the cause is remanded.

## ON STATE'S MOTION FOR REHEARING.

GRAVES, Judge.

The State has filed a motion for a rehearing herein alleging that we were in error in holding that the cross-examination of appellant's character witnesses caused the jury to take into consideration the charge herein set forth concerning the death of Willis Hawes, when such witnesses were testifying as to the reputation of appellant as a peaceable, law-abiding person. The quotation in question and answer form in the original opinion was taken from the testimony of E. E. Lowe, and was in answer to his having been questioned by appellant's attorneys relative to appellant's reputation prior to November 23, 1944 (the date of the killing of Willis Hawes and the date alleged in the indictment). This cause went to trial on February 19, 1945. The witness Lowe, in his testimony, gave appellant a good reputation, being limited therein up to the date of the homicide. We are unable to see any erroneous inference in the answer that up to November 23, 1944, this reputation *was* good; how else the question could have been fairly answered we are unable to say. The further question: "Just up to that time is what you mean?" was all that the witness had been asked about, and that was the subject of inquiry at such cross-examination. Appellant had filed an application for a suspended sentence and under our rulings, appellant's reputation up to the moment of his trial was permissible, and if the above statement as to the fact of the killing of Willis Hawes imported a change in appellant's reputation since that unfortunate occurrence, we are at a loss to see how serious error could be predicated thereon. Could the trial court be required to charge the jury that they could not consider the circumstances of the death of Willis Hawes until they came to decide the request for a suspended sentence; that they could then consider such, but not to consider same while debating or deciding on the question of guilt under the indictment.

The State fails to agree with the original opinion in its assertion that it sought to prove by each character witness the killing of Willis Hawes and cause the same to be taken into

consideration in forming such opinion as to appellant's reputation.

The first character witness was J. B. Scott, and the gist of his answer was: "I heard about him killing Willis Hawes, and I still say his reputation is good."

The second such witness was Wayne Green, and he said in his cross-examination: "I heard about him killing Willis Hawes. As to whether I still say his reputation is good, I don't know the circumstances of the case."

The third character witness was Mr. Lowe, whose testimony is above set forth.

The fourth character witness was Sam McCarroll, and he was not cross-examined by the State; hence no error could be predicated on his testimony.

The fifth such witness was Harry Wright, and no cross-examination of him is shown.

The sixth character witness was Homer Jordan, and his cross-examination shows as follows: "I had never heard about him gambling in a beer joint in San Angelo."

All these character witnesses were asked about such reputation as prior to the date of the killing.

It will be noted that the witness Lowe, whose testimony is quoted in our original opinion, merely answered the question propounded to him, and the proceedings just prior to the quotatation in the opinion were "that he knew his (appellant's) reputation in this county prior to November 23, 1944, for being a peaceable and law-abiding citizen, and also prior to November 23, 1944 (the date of the alleged killing herein) he knew the defendant's general reputation for truth and veracity, and that defendant's reputation for being a peaceable and law-abiding citizen and for truth and veracity was good." Contending that such proceedings were not material error, the State cites us to the case of King v. State, 113 S. W. (2d) 181, and we quote therefrom as follows:

"Bill of exception No. 3 reveals that appellant had used as a witness one Rutland, who had testified that appellant's reputation as a peaceable, law-abiding citizen was good, after which

the county attorney asked the witness upon cross-examination if his evidence had not related to a time prior to the incident for which appellant was being tried, to which the witness answered yes, and the county attorney asked if witness had not heard quite a bit of discussion as to his reputation since that time. Appellant's objection was overruled. The court appends to said bill of exception the questions and answers of the witness at this point, which shows that after the court had overruled appellant's objection the county attorney then said to witness, 'And it (his reputation) hasn't all been good by any means?' to which witness answered, 'Well, I have heard a lot since that time.' The state was venturing on dangerous ground in the particulars mentioned, but it appears that the witness did not advise whether what he had heard had been good or bad, and we think the bill fails to reflect error which would call for a reversal."

We confess our inability to see any difference in the above quotation and the present case save that in the instant case a greater latitude should be allowed on account of the plea for a suspended sentence, which would let the jury take into consideration appellant's reputation up to the time of the trial; and surely they should have at this point taken into consideration the killing of Mr. Hawes, because that was the very thing for which appellant desired to have his sentence suspended.

We do not think any error could be predicated upon the bills considered in our original opinion, and thus being convinced, the State's motion for a rehearing is granted, the judgment of reversal is set aside, and the judgment is now affirmed.

### APPELLANT'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant contends in his motion for rehearing that we erred in holding that the cross-examination of his character witness, E. E. Lowe, did not transgress the rule announced by this court in Diggs v. State, 88 S. W. (2d) 103; Stephens v. State, 80 S. W. (2d) 980, and many other cases cited by him, discussing the rule. We have again read the record in the light of his motion for rehearing but remain of the opinion that the cross-examination of appellant's character witnesses did not transgress the rule announced in the cases above cited. The rule, as announced in the cases referred to, is to the effect that where the defendant files a plea for a suspension of sentence in the event of his conviction, as was done in the instant case, he puts his reputation in issue up to the time of the trial, based on matters pertaining to

his conduct other than the offense for which he is on trial. In other words, it is not permissible to parade before the jury the opinion of the public relative to the offense for which he is being tried. Such was not, as we read the record, the case here. The only instance in which the State came near the boundary line of the rule relating to the cross-examination of the character witnesses relates to the cross-examination of the witness Lowe, but he did not overstep the same. In support of the opinion here expressed, we refer to the case of King v. State, 113 S. W. (2d) 181.

If there is any language in the opinion of affirmance which might be construed as permitting the fact of the present offense to be available to the State as a basis for witnesses to testify upon the question of appellant's general reputation the same is not approved by the present writer. The bills of exception relating to the cross-examination of appellant's character witnesses, as well as the record generally, show that counsel for appellant limited the inquiry of appellant's general reputation to the time prior to the killing. The cross-examination of the witness Lowe and the other character witnesses elicited the fact that they had heard of the present killing and that they were testifying to appellant's reputation prior to that occurrence. Appellant's counsel had so limited his inquiry in the first instance. It occurs to us that appellant is urging that because the State called attention to the killing—which appellant had already done—that inferentially the State had shown that since the killing and because thereof appellant's reputation was bad at the time of the trial. We are of opinion this would be going too far. Of course, the fact of the present killing and all the proven circumstances incident thereto were before the jurors, and could properly be considered by them, not only in determining the question of appellant's guilt, but also whether a suspended sentence should be recommended.

Appellant next asserts that we erred in not sustaining his contention that the argument of the district attorney was of such a prejudicial nature as calls for a reversal, and that we failed to discuss the same in the opinion of affirmance. His first complaint relates to the following remarks made by the district attorney: "Don't give him a suspended sentence; either send him to the penitentiary or turn him loose; and when you turn him loose, come back in this court room and give him his gun back to him; put it in his hands and tell him to go back to Duval's, or some other beer tavern, and drink and play the gambling machine with the young boys in this community."

There was certainly no harm in the first sentence of the remark. There is evidence in the record that appellant went to Duval's Cafe with a gun; that he and some boys played the marble machine at the cafe; that he drank some beer while in the cafe. It occurs to us that the argument was based on evidence in the case. Consequently, no error is reflected by the bill.

We do not deem it necessary to here discuss in detail each of appellant's other complaints relating to the argument of the attorneys representing the State, because we do not believe that the remarks were of a material character such as, under the circumstances, were calculated to injuriously affect the rights of the defendent. Branch's Ann. Tex. P. C., page 204, sec. 361, states the rule to be as follows: "Before a reversal can be had on account of improper argument of State's counsel, it must clearly appear that the remarks were improper and that they were of a material character and such as under the circumstances were calculated to injuriously affect the rights of the defendant." This rule is re-stated by this court in the case of Patterson v. State, 147 S. W. (2d) 784, as a correct rule.

He next complains because we failed to discuss and hold that it was error for the court to permit the widow of the deceased and her child to sit inside the railing in the court room, not over eight feet from where the nearest juror sat in the jury box. The Constitution provides for a public trial. To have excluded the widow from the court room would have been in contravention of Article 1, Section 10 of the Constitution of this State. Of course, had she or any other person, by her or his conduct, interfered with the orderly conduct of the trial, the court no doubt would have had a right to remove her or such other person and impose a fine.

The motion for rehearing is overruled.