Michael HENDERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 60813.

Court of Criminal Appeals of Texas,
Panel No. 2.

June 24, 1981.

Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., William Kane and George Mackey, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for robbery. After finding appellant guilty, the jury assessed punishment at five years.

Appellant was convicted of having robbed Edna Hancock in the parking lot of a K–Mart store in Arlington on December 13, 1977. Hancock was pushed to the pavement on the parking lot. She suffered a compound fracture of the left arm and several of her teeth were knocked out.

In his first ground of error, appellant contends the court's charge to the jury in the guilt or innocence phase is fundamentally defective. Specifically, he points to the definitional portion of the charge in which the term "bodily injury" was defined to include death. This matter is raised for the first time in this appeal.

■ Where there is no objection to the charge at trial, only fundamental error will be considered on appeal. *York v. State*, 566 S.W.2d 936 (Tex.Cr.App.). The definition of "bodily injury" in V.T.C.A. Penal Code, Sec. 1.07(a)(7), does not include death. In *Cumbie v. State* (Tex.Cr.App.), 578 S.W.2d 732, it was held that the addition of the term "or death" in the court's charge while the indictment alleged "bodily injury," did not present fundamental error. Under our holding in *Cumbie*, no fundamental error is present in the instant case. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends the court erred in allowing the prosecutor to ask appellant five improper questions. He maintains the questions were improper because the prosecutor went into "collateral deeds of misconduct."

■ As to three of the allegedly improper questions, there was no objection at trial and consequently nothing is presented for review. *Sanchez v. State*, 589 S.W.2d 422 (Tex.Cr.App.); *Cannon v. State*, 574 S.W.2d 71 (Tex.Cr.App.). Appellant's failure to request any further relief after his objection to one of the questions was sustained, preserves nothing for review. *Smith v. State*, 547 S.W.2d 6 (Tex.Cr.App.); *Graham v. State*, 546 S.W.2d 605 (Tex.Cr.App.). With regard to the fifth question complained of, the record reflects that during cross-examination, the prosecutor asked appellant the following question:

"Q. You don't recall. Okay, sir, in October of 1977, did you fail to attend on the 27th, 11th, 12th, 13th, 14th, 18th, 19th, 21st, 24th, 27th, 28th days of that month?

"A. Are you saying that I'm not in school or are you saying that I did not attend school?
"MR. TURNER: Your Honor, I'm going to object to these kind of questions. I don't think it's relevant."

■ An objection to the admission of evidence must be specific and must state the grounds of the objection, failing which, the objection will not be considered on appeal. *Vela v. State*, 516 S.W.2d 176 (Tex.Cr.App.). In *Wilson v. State*, 541 S.W.2d 174 (Tex.Cr. App.), the following objection was found to be too general to preserve an alleged error for review: "Objection, Your Honor, I can't see the relevancy of this line of questioning in this case . . ."

In this appeal, appellant urges the above question was an improper attempt to impeach with "collateral deeds of misconduct," namely, truancy. We find that appellant's objection at trial was too general to inform the court of the basis of the objection and thus preserves nothing for review. Appellant's second ground of error is overruled.

In his fourth ground of error, appellant contends the court erred in overruling his objection to an improper question. The question was asked in the cross-examination

of one of appellant's reputation witnesses at the punishment phase. Appellant maintains the question was improper because it constituted an improper assertion of fact.

During the punishment phase, appellant called as a witness Reverend L. B. Adams. The witness testified that appellant's reputation for being a peaceful and law-abiding citizen was good. On cross-examination, the prosecutor asked Adams the following questions of which appellant now complains:

"Q. Sir, do you know anything about the crime which he has been convicted of in this courtroom?

"A. No more than what I read in the paper.

"Q. Did you know that he mugged a seventy-five year old lady out in the parking lot?

"A. No more than what I read in the paper.

"MR. TURNER: Your Honor, I'm going to object to Mr. Mackey using the particular offense that we are on trial for on the the basis of have you heard questions on this character witness.

"THE COURT: I will overrule the objection to the last question."

In cross-examining a reputation witness, the State is permitted to ask such witness if he has heard of a specific act of misconduct of the defendant. *Pemberton v. State*, 601 S.W.2d 333 (Tex.Cr.App.). However the question is not to be framed so as to imply that the act has actually been committed—an assertion of truth of the matter. *Pemberton v. State*, supra; *Moffett v. State*, 555 S.W.2d 437 (Tex.Cr.App.).

At trial, appellant objected to the specific act referred to within the questions asked of Adams. He did not object that the question was improper as framed, namely, implying that the act had actually been committed—an assertion of the truth of the matter. Thus, the contention presented in this ground of error does not comport with the objection voiced at trial. Nothing is presented for review. See *Nelson v. State*,

607 S.W.2d 554 (Tex.Cr.App.); *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.).

In this third ground of error, appellant further complains of the questions quoted above which were asked of Adams on cross-examination. Appellant maintains the court erred in overruling his objection to the questions. He contends the questions asked of the reputation witness on cross-examination were improper because they were based upon the offense for which he was being tried. As noted above, Adams was called as a witness by appellant during the punishment phase.

In *Wright v. State*, 491 S.W.2d 936 (Tex.Cr.App.), the Court held that it is improper to test the knowledge of a witness who has testified to the good reputation of a defendant for being a peaceable, law-abiding citizen by asking "have you heard" questions concerning the alleged offense for which he is being tried. Although the question of the reputation witness in *Wright* was improper, no reversible error was shown and the Court stated ". . . the answer of the witness does not reflect what effect the robbery offense referred to in the question had upon the appellant's reputation." Id. at 938.

In *King v. State*, 133 Tex.Cr.R. 496, 113 S.W.2d 181, the defendant had been convicted of driving while intoxicated and presented on appeal a contention similar to that now raised by appellant. There, it was stated:

"Bill of exception No. 3 reveals that appellant had used as a witness one Rutland, who had testified that appellant's reputation as a peaceable, law-abiding citizen was good, after which the county attorney asked the witness upon cross-examination if his evidence had not related to a time prior to the incident for which appellant was being tried, to which the witness answered yes, and the county attorney asked if witness had not heard quite a bit of discussion as to his reputation since that time. Appellant's objection was overruled. The court appends to said bill of exception the questions and answers of the witness at this point,

which shows that after the court had overruled appellant's objection the county attorney then said to witness, 'And it (his reputation) hasn't all been good by any means?' to which witness answered, 'Well, I have heard a lot since that time.' The state was venturing on dangerous ground in the particulars mentioned, but it appears that the witness did not advise whether what he had heard had been good or bad, and we think the bill fails to reflect error which would call for a reversal." Id. at 181 and 182.

See also *Grizzell v. State*, 164 Tex.Cr.R. 362, 298 S.W.2d 816; *Boone v. State*, 149 Tex.Cr. App. 476, 196 S.W.2d 638.

■ The questions asked of Adams were improper in that they concerned the offense for which appellant was being tried. This Court has held that the asking of an improper question will not result in reversible error unless the question was obviously harmful to the defendant. See *Brem v. State*, 571 S.W.2d 314 (Tex.Cr.App.); *Cavender v. State*, 547 S.W.2d 601 (Tex.Cr. App.).

From the record before us, we cannot conclude that appellant was obviously harmed by the improper questions asked of Adams. As in *Wright* and *King*, the answer of Adams did not reflect what effect the robbery offense referred to in the question had upon appellant's reputation in the community. No reversible error is shown. Appellant's third ground of error is overruled.

In his fifth ground of error, appellant contends the court's charge on punishment was erroneous in failing to inform the jury of all the conditions of probation which could be imposed in the event that the jury recommended that the sentence be probated. Specifically, appellant maintains the court failed to inform the jury that a condition of probation was that the probationer could be ordered to "pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one or several sums, and make restitution or reparation in any

sum that the Court shall determine." This contention is presented for the first time in this appeal.

In *Flores v. State*, 513 S.W.2d 66 (Tex.Cr. App.), the Court was presented with a contention similar to that now raised and stated as follows:

"We cannot agree with appellant's contention. While it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if probation is recommended by the jury, the failure to so enumerate the said conditions is not harmful to the accused or restrictive of the court's authority under the statute . . . ." Id. at 69.

See *Kemner v. State*, 589 S.W.2d 403 (Tex. Cr.App.); *O'Neal v. State*, 421 S.W.2d 391 (Tex.Cr.App.).

■ Our review reveals no fundamental error in the court's charge on punishment. In the absence of an objection at trial, appellant is precluded from complaining on appeal of all but fundamental error in the charge. *York v. State*, supra. We find that the court's charge in the present case adequately protected the appellant's rights and that he was not harmed thereby. Art. 36.19, V.A.C.C.P. Appellant's fifth ground of error is without merit.

The judgment is affirmed.

CLINTON, Judge, concurring.

In overruling the third ground of error the Court gives continuing vitality to a notion that creates what some would call a "Catch-22." The Reverend is asked what the Court says is an improper question, but the asking does not constitute reversible error because "the *answer* of Adams did not reflect what effect the robbery offense referred to in the *question* had upon appellant's reputation in the community." [1]

No, it most certainly did not for the simple reason the Reverend was not asked *that* question. The inquiry was limited to "do you know," not "have you heard." The rather straightforward answer to the ques-

1. Or, as worded in *King v. State*, 133 Tex.Cr.R. 496, 113 S.W.2d 181 (1938), "whether *what* he

had heard had been *good* or *bad*." (All emphasis is mine unless otherwise indicated.)

tion was he did not *know* "no more" than what he had read in the paper—presumably a newspaper report of trial testimony and proceedings.

Now, just how can it come about that "the answer of the witness" may reflect "what effect" the offense on trial has on the reputation of the accused? Unless the witness is to be briefed by counsel to volunteer a nonresponsive answer—surely an improper act—someone must frame and put to the witness a question designed to draw from him an answer as to his view of whatever the effect on reputation of the accused.[2] Who is to put the question?

Therein lies, in my judgment, the Catch-22. Is the prosecutor to be permitted to press on into an area improperly entered in the first place?[3] Or must defense counsel, to show reversible error, pursue the matter? Since he will be asking about whether what the witness had heard concerning the accused's mugging a 75 year old lady in a parking lot "had been good or bad," *King v. State*, supra, the answer seems selfevident—and even more harmful to the accused than the improper question initially posed by the State.[4] On the other hand, should the witness answer with a straight face, "good," who on the jury that has just said "guilty" is going to believe him? Catch-22.

*King v. State* claims no authority for saying the bill of exception failed to reflect error and does not explicate its terse nega-

tive observation. *Boone v. State*, cited in n. 3, ultimately followed it because the application for suspended sentence "would let the jury take into consideration appellant's reputation up to the time of trial," and it would surely consider the facts of the offense with respect to which the sentence was sought to be suspended, and *Wright v. State*, 491 S.W.2d 936, 938 (Tex.Cr.App. 1973) quoted from *King* in giving a third reason why the question and answer there did not show reversible error. Thus, *King* concocted strange medicine that is rarely prescribed. I would make it unavailable by completely withdrawing it from the supply of judicial precedent.

An "obviously harmful" have-you-heard question does not need the company of an additionally harmful answer to constitute the asking reversible error. See *McNaulty v. State*, 138 Tex.Cr.R. 317, 135 S.W.2d 987, 988–98 (1939). If the question violates a rule of law, by definition it is harmful to some degree or the mere asking would not be deemed "improper." When the trial court demonstrably errs in overruling a valid objection, to determine whether reversible error is shown I believe the Court should look to all the circumstances surrounding the query, including the broad setting, the particular context, its calculated nature, the likely reaction of rational jurors and whatever other objective factors and subjective inferences characterize the question.

---

**2.** Quite frankly, I am unable to perceive how a newspaper account of trial in progress may contemporaneously affect the reputation of the accused, considering that it is "the collective opinion of the community," Ray, Law of Evidence § 1324, 1A Texas Practice 500, which hardly has had time to form, much less be disseminated throughout and discussed in the community.

**3.** In *Boone v. State*, 149 Tex.Cr.R. 476, 196 S.W.2d 638, 639 (1945) the Court entertained a line of reasoning that I believe now is sound. That is, for the State to utilize the offense on trial as a contributing factor of reputation "would be bringing into the case the judgment of the people regarding the very case for which the party was on trial ... [and] ... would be a means by which the State would be able to prove that the people of the community generally viewed the offense with disapproval,"

whereas, insisted the Court, "The judgment of the people relative to the merits of a transaction is not proper evidence for the consideration of the jury." On second rehearing Presiding Judge Hawkins reiterated that "it is not permissible to parade before the jury the opinion of the public relative to the offense for which he is being tried." It seems to me that is exactly what the Court in the case at bar would not only permit but, indeed, require in order to find reversible error.

**4.** As the Court remarked in *Stephens v. State*, 128 Tex.Cr.R. 311, 80 S.W.2d 980, 982 (1935): "... If the discussion of the charge contained in the indictment could be used as a basis for showing that a man's reputation as a law-abiding citizen was bad, then no man who was on trial could successfully show a good reputation as a law-abiding citizen."

In my judgment, though, given the exchange quoted in the majority opinion, none of the rules for testing error in overruling a good objection to an improper have-you-heard question is called into play, for as I have already emphasized the question here was did the witness "*know*" the bare facts of the case. If, as the objection stated, the prosecutor was "using the particular offense" on trial for "the basis of have you heard questions" to the character witness, the majority opinion fails to reveal the content of such a question.

When squarely presented I am prepared to overrule *King*—insofar as it failed to find error in Bill of Exception No. 3 because "the witness did not advise whether what he had heard had been good or bad"—and to disapprove of the few followers of *King*. For now I am content to concur in the judgment of the Court.[5]

---

**5.** This case typifies once again a certitude that the have-you-heard question is an anachronism that creates more trouble than it is worth. The theory allowing the question is "that if the witness is truly familiar with the reputation of the defendant, he will have also heard of adverse reports which are circulating in the community," *Brown v. State*, 477 S.W.2d 617, 620 (Tex.Cr.App.1972); *Ward v. State*, 591 S.W.2d 810, 817 (Tex.Cr.App.1979). In an earlier *Wright v. State*, 98 Tex.Cr.R. 513, 266 S.W. 783, 784 (1924) the Court noted that "[m]uch confusion had arisen" about this matter; the instant case indicates it has not yet abated.

Because experience has demonstrated that nowadays the witness who comes to court to give reputation testimony rarely is "truly familiar" with community reports of the reputation of the accused, learning sometime just before trial enough to express an "opinion" on the subject from one or more persons closely associated with the case, that the witness may be expected to have heard reports adverse to his stated opinion is an utter fallacy. The whole exercise has become a charade; whatever value it once had is gone. Therefore, in my opinion, continued efforts to abate the confusion are not worth the candle.