**Daniel Wayne PARR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–92–00543–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 30, 1993.

Rehearing Denied Oct. 28, 1993.

---

Winston E. Cochran, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before ROBERTSON and CANNON, JJ., and ROBERT E. MORSE, J., Sitting by Designation.

## OPINION

ROBERTSON, Justice.

A jury found appellant guilty of the offense of possession of a controlled substance. The enhancement paragraphs were found true, and the judge assessed punishment at forty

years confinement in the Institutional Division of the Texas Department of Criminal Justice. In five separate points of error, appellant contends there was insufficient evidence to sustain the conviction, that the court committed harmful error in admitting impermissible hearsay, and that error occurred in submitting the second enhancement allegation. We affirm.

■ Appellant's first point of error complains of insufficient evidence to convict the appellant of the alleged offense. In addressing a factual insufficiency point, the reviewing court must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We do not resolve any conflict of fact or assign credibility to the witnesses' testimony, as such matters are properly within the function and purpose of the jury. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). To prove unlawful possession of a controlled substance, the state had to prove the following elements: one, that the accused exercised control, management, and care over the substance; and two, that the accused knew the matter possessed was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App. 1988). In this regard, we state the following facts as adduced at trial, looking at the evidence in a light most favorable to the verdict.

■ Appellant had been under periodic surveillance for approximately one month prior to his arrest. On the day in question, undercover police officers saw appellant get into his car and followed him as he drove to a grocery store, where the appellant got out of the car and made a phone call. Soon after the phone call, an individual arrived at the scene and handed something to the appellant. The appellant then drove two blocks away. The officers testified at trial that based on their years of experience as narcotics officers, this scene looked like a typical drug transaction. To apprehend the appellant before he could inject the drugs, the officers moved in with their vehicles and arrested the appellant. One officer testified to seeing drug paraphernalia on the floor of the driver's side of the appellant's vehicle when he got out of the car. One of such items found was the bottom portion of a Sprite can, a makeshift "cooker" typically used to heat heroin so that it may be injected. The officer also noticed syringes lying on the floor of the car on the driver's side, and track marks on the arms of both the appellant and the appellant's brother who was the passenger in the vehicle. The officers also recovered from the car a red plastic bag. Suspecting that the bag contained a controlled substance, the officers submitted the bag for laboratory tests. The tests showed that 0.1 milligrams of heroin were present in the red plastic bag, and 0.2 milligrams of heroin were present in the soda can bottom. No substance was found on the syringes.

Appellant argues strongly that, according to *Campbell v. State*, 822 S.W.2d 776 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd), visibility is the gravamen of this or any possession case. Lack of a bright-line rule, however, in determining knowing possession of a controlled substance means that we cannot mechanically determine whether the elements of possession are met from just looking at objective measurements arrived at through laboratory tests. *Johnson v. State*, 658 S.W.2d 623, 627 (Tex.Crim.App.1983). The state still must meet its burden of proving knowing possession, and circumstantial evidence is a legitimate means of doing so. *See Fuller v. State*, 827 S.W.2d 919 (Tex. Crim.App.1992); *Johnson v. State*, 803 S.W.2d 272, 279–80 (Tex.Crim.App.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). Because of the above described circumstances and facts present in this case, we find this case consistent with *Campbell*. In *Campbell*, the appellant had been arrested for public intoxication. The search pursuant to that arrest yielded a matchbox which was later tested and found to contain 0.6 milligrams of cocaine. *Campbell*, 822 S.W.2d at 777. This court reversed appellant's conviction in *Campbell* not solely because of the lack of testimony that the

drug was visible to the naked eye, but because of the lack of *any* other circumstance, in addition to measurability, connecting the appellant to knowing possession of the controlled substance. *See id.* at 777–78.

In contrast, in the instant case, just as in *Chavez v. State*, 768 S.W.2d 366 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd), other circumstances are present to uphold the jury's verdict, namely, signs alerting experienced narcotics officers to the presence of drugs. In *Chavez*, the only such evidence was a firearm and a plastic "baggie" which, officers testified at trial, was a common means of transporting cocaine. *Id.* at 368. In the instant case, a far greater accumulation of circumstances when viewed in their totality point to the appellant's involvement in the possession of the heroin: the movements and interactions of the appellant typifying a drug transaction, the "cooker" which was warm when the officers arrested the appellant, the track marks on the appellant, and the testimony of appellant's brother that appellant was a drug user.

Based on these facts which were before the jury, we find that the jury could find beyond a reasonable doubt that appellant was guilty of possession of a controlled substance. We overrule appellant's first point of error.

Appellant's second and third points of error present a more difficult question as they complain of the harm incurred by the judge admitting hearsay evidence. The prosecutor explained in his opening remarks that the jury would be hearing from police officers that they had heard appellant was engaged in some "illegal activity." Counsel objected that such information would be hearsay, but the trial judge overruled the objection. Thus, when the prosecutor asked the testifying officer on direct why the appellant was under surveillance, the officer responded that they "had received information from a confidential informant that [the appellant] was a professional shoplifter as well as a drug abuser." The state argues that these statements were not offered for their truth, but rather for the purpose of showing why the appellant was under surveillance. This court has implicitly approved other ways of reveal-

ing to the jury how and why a particular suspect is under surveillance without resorting to inadmissible hearsay. *See, e.g., Stewart v. State*, 640 S.W.2d 643, 645 (Tex.Civ.App.—Houston [14th Dist.] 1982, no pet.). The court of criminal appeals has also recognized the parameters of admissible testimony when a police officer is describing such background information, stating that it is more appropriate for the officer to state merely that he was acting "in response to 'information received.'" *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex.Crim.App.1989). A party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly. *Id.*

■ We find that, contrary to the state's argument that appellant had to ask also for an instruction to disregard in order to preserve error, appellant did not waive his right to appeal this error. Timely objection adequately preserves the error for appellate review. *James v. State*, 772 S.W.2d 84, 100 (Tex.Crim.App.1989). If the objection had been sustained, then appellant would have had the burden of requesting such further relief. *See Henderson v. State*, 617 S.W.2d 697, 698 (Tex.Crim.App.1981); *Smith v. State*, 547 S.W.2d 6, 12 (Tex.Crim.App.1977). The case the state cites as supporting its proposition to the contrary is inapposite.

■ While it was indeed error for the trial judge to admit what is clearly hearsay, despite the prosecutor's attempt to disguise it, the central question is whether the error constitutes reversible error. For this analysis, we will first address the remark that appellant was a drug abuser and the possibility that this error was cured by later testimony. After the testimony of the arresting officers, the appellant called as a witness his brother, who had been the passenger in the vehicle, to testify on behalf of appellant. The witness, who had already been convicted for offenses arising out of this same episode, stated that the drug paraphernalia belonged to him. However, the witness also testified on cross examination that his brother, the appellant, was a heroin user. Because this information regarding illegal activity, drug use, was admitted without objection from the appellant, and it corroborates the erroneous-

ly admitted hearsay evidence of the first testifying officer to this effect, we find that the error was cured. *Anderson v. State,* 717 S.W.2d 622, 627 (Tex.Crim.App.1986); *Syndex Corp. v. Dean,* 820 S.W.2d 869 (Tex.Civ. App.—Austin 1991, writ denied); *Bolin v. Smith,* 294 S.W.2d 280, 283 (Tex.App.—Fort Worth 1956, writ ref'd n.r.e.). Because this later testimony rendered harmless the earlier error, we now turn our attention to determining whether there is reversible error in the officer's remark that he had heard appellant was a professional shoplifter.

The court of criminal appeals has in recent years clarified the parameters of the harm analysis to add some certainty and uniformity in what has been a complex area of law. This clarification came in 1989 in the case of *Harris v. State,* 790 S.W.2d 568 (Tex.Crim. App.1989), in which the court of criminal appeals stated that the focus of a harm analysis must be the error itself, not a body of evidence which may otherwise show "overwhelming evidence of guilt." *Id.* at 587. According to *Harris,* the harm analysis includes ascertaining the "source of the error, the nature of the error, whether or to what extent it was emphasized by the state, and its probable collateral implications." *Id.* An additional factor to consider is "how much weight a juror would probably place upon the error." *Id.* Because this analysis focuses on the integrity of the process and not the result, the final factor to consider is "whether declaring the error harmless would encourage the state to repeat it with impunity." *Id. See also* Tex.R.App.P. 81(b)(2).

■ We will address these factors in turn. In this case, the error originated with the prosecutor, who, even in his opening remarks introduced the hearsay testimony he would later be eliciting from the officers. The prosecutor stated that the officers would be telling the jury that they received information that the appellant was involved in "illegal activity." Counsel for the appellant objected here, alerting the trial judge that any such information would be hearsay. The objection was overruled. The prosecutor then on direct examination of the officers elicited the complained of information to which the appellant had already objected as hearsay.

Thus, the nature of the error was to put before the jury potentially unreliable information in the form of hearsay which may have prejudiced the jury's impression of the appellant.

The next line of inquiry entails determining the collateral implication of the error. In this case, it was the suggestion that a person characterized as a professional shoplifter would be more likely to be in possession of a controlled substance than would be an otherwise upstanding and law-abiding citizen. The instant case is analogous to the one in *Higginbotham v. State,* 807 S.W.2d 732 (Tex. Crim.App.1991), in which the court's finding reversible error because of inappropriate remarks by the prosecutor was based in part on the repetition of these remarks. *Id.* at 736. The collateral implication of that misconduct in repeating the error many times over was to disparage the appellant's sole defense of insanity. *Id.* at 737. In the instant case, there was no such repetition which could have emphasized the remark; nor was there any infringement otherwise on appellant's opportunity for a fair trial. Additionally, the sufficiency of the evidence in this case to link the appellant to the controlled substance precludes finding any additional edge or advantage gained by the improperly admitted statement. Thus, in contrast to *Higginbotham,* the error in the instant case is of a more benign nature.

In determining the emphasis the jury placed on the information in reaching their verdict, we must look at the statement's occurrence in the context of the entire trial. Its placement at the beginning of the trial lends some credence to the theory that it immediately swayed the jury's impression of the appellant in determining his guilt. However, more significant is the fact that the statement occurred on page seven of the record and was never mentioned again at any time throughout the guilt-innocence phase of the trial which ended at page ninety-seven. Throughout the rest of the trial, the jury heard an array of evidence which it was free to accept or reject as evidence of appellant's guilt, none of which alluded to any other such extraneous issues.

Repetition and emphasis of the error are also means of ascertaining the state's intent in making the error. As such, these elements figure in the final inquiry of determining whether harmful error must be found to prevent the state's continuing to pursue purposeful improprieties. For example, in *Higginbotham,* the frequent repetition of the allusions to the defendant's sanity in giving a confession had the cumulative effect of disparaging the defendant's sole defense of insanity. Further contributing to the finding of harmful error was the fact that the confession had been illegally obtained in the first place. *Higginbotham,* 807 S.W.2d at 738. In contrast, contributing to finding harmless error in *Harris* were the facts that the complained of error occurred in the state's final argument and the state made only a "passing reference" to the extraneous offense at issue. *Harris,* 790 S.W.2d at 588. Additionally, the court of criminal appeals looked to the record as a whole and found that "the State was not attempting to taint the trial process in offering as evidence the extraneous offenses." *Id.* In *Higginbotham* the court distinguished the error in *Harris* by noting that in the course of any trial proceeding prosecutors will have proper legal avenues available to seek admission of extraneous offense through the exceptions to TEX.R.CRIM.EVID. 404(b). *Higginbotham,* 807 S.W.2d at 737–38. Similarly, in the instant case, we do not find that there is a danger of the state repeating this error because there are evidentiary safeguards in place which prohibit admitting hearsay except in the instance of very well-defined exceptions. Therefore, although we cannot commend the prosecutor for his conduct, neither can we find that this error would "encourage the State to repeat it with impunity."

Thus, because we find beyond a reasonable doubt that this error did not contribute to the jury's verdict, we find that the error was harmless. Appellant's second and third points of error are overruled.

The state does not make the argument in its brief to which appellant addresses his fourth point of error; therefore, we do not address it.

Appellant cites as his fifth and final point of error the trial court's submission of the second enhancement paragraph. Appellant alleges that the submitted paragraph contains an omission which does not comport with section 12.42(d) of the Texas Penal Code which states the prerequisites for finding habitual offender status and thus increases the minimum sentence which may be imposed.

Appellant did not make this objection at the trial level and asks us now to find that the omission constitutes fundamental error requiring reversal. Circumstances in this case, however, dictate that we cannot thus find. First, the judgment reflects that the appellant answered true to the enhancement allegations; and second, the penitentiary records submitted clearly reveal appellant's two prior felony convictions, the prerequisites for finding him a habitual offender and increasing the minimum sentence he could receive. In these circumstances, he cannot be heard to complain now that fundamental error occurred such that he is entitled to challenge the validity of the second paragraph. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.