

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-11-00417-CR
_____

RICHARD SCOTT PURGASON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 18th District Court
Johnson County, Texas
Trial Court No. F39678, Honorable John E. Neill, Presiding

May 13, 2013

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Richard Scott Purgason, was convicted of three counts of aggravated sexual assault of a child younger than 14 years.[1]  Appellant was sentenced to confinement for 99 years in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) in each case, with the sentences to run cumulatively.[2]  Appellant has appealed his judgment and sentence through two issues.  First, appellant

_____

[1] See TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (2)(B) (West Supp. 2012).

[2] See TEX. CODE CRIM. PROC. ANN. art. 42.08 (West Supp. 2012).

contends that he was denied his constitutional right to a speedy trial. Second, appellant contends that the trial court erred in admitting the testimony of two outcry witnesses. We will affirm.

Factual and Procedural Background

The victim of the sexual abuse, J.K., was appellant's step-daughter. Following her removal by Children's Protective Service (CPS), J.K. made an outcry to her foster mother, Becky Boone, in August of 2005. Following the outcry to Boone, J.K. was examined at Cook Children's Hospital in Fort Worth. Donna Wright, Sexual Assault Nurse Examiner, at Cook Children's found that a portion of J.K.'s hymen was missing, and in her opinion, the cause was "blunt force trauma penetration." This information was relayed to J.K.'s counselor, Troyce Smedema, who then questioned J.K. about the clinical findings. During this discussion, J.K. made a second outcry in which she stated that appellant had inserted his penis in her vagina on many occasions. As a result of J.K.'s outcry, an investigation of appellant was initiated. The investigation resulted in appellant being charged with multiple counts of aggravated sexual abuse of a child younger than 14 years.

Appellant was initially arrested on October 18, 2005, and was confined in the county jail until he first made bond on July 3, 2006. Appellant's release on bond was subject to a number of conditions. He could not be where children might be expected to congregate nor could he be in the presence of a minor unless an adult was present. Appellant was required to appear in the trial court on the first Friday of each month between the hours of 1:30 p.m. and 2:30 p.m. The record reflects that appellant

2

appeared August 2006 through November 2007 without fail.  Appellant failed to appear on the first Friday of December 2007.  He then appeared each first Friday between January 2008 and April 2009.  However, appellant missed his appearance on Friday, May 1, 2009.  The State then filed a motion to have his bond declared insufficient.

The trial court found the bond insufficient and issued a capias for appellant's arrest on May 4, 2009.  Appellant was arrested on May 12, 2009, and returned to jail. Appellant bonded out of jail on October 23, 2009, and remained free on bond subject to the same reporting requirements of his initial bond until his trial and conviction. Pursuant to those reporting requirements, appellant appeared in the trial court every first Friday from November 2009 through January 2011.  The record makes no mention of reporting in February 2011; however, neither does it mention a failure to report. Appellant appeared in the trial court each first Friday from March 2011 through June 2011.  After June 2011, appellant appeared in court for a number of conferences and pre-trial matters, and the record makes no mention of appearances required pursuant to the bond condition.

The first mention in the record of a trial setting is contained at a hearing denominated a pre-trial conference on January 17, 2006.  At this hearing, appellant's trial counsel informed the trial court that the parties were not able to work out anything on the case and requested that the case be passed until the next setting, February 17, 2006.  Prior to this hearing, on February 2, 2006, appellant filed a motion for a speedy trial.  At the pre-trial conference on February 17, 2006, appellant again requested that the case be passed until the docket of March 28, 2006.  On March 17, 2006, during the pre-trial conference for the March 28, 2006 trial setting, appellant withdrew his motion

for a speedy trial. Subsequently, at a status conference held on March 28, 2006, appellant affirmatively rejected the State's offer of a plea bargain. The next setting was a pre-trial hearing on October 28, 2008, which set the case for trial on April 13, 2009. At this October 28, 2008 hearing, appellant again refused to accept the State's plea bargain agreement. After the October 28, 2008 pre-trial hearing, the record is silent regarding any efforts of anyone involved to get this case to trial until January 18, 2011, at which time the trial court sent a letter to appellant's trial counsel advising that the case was set for trial on June 20, 2011. There is nothing in the record to indicate why the June 20, 2011 trial setting was not conducted; in fact, a pre-trial hearing was held on June 17, 2011, when the appellant's trial counsel again advised the trial court that the parties were not able to resolve the case. The trial court then advised that he would see the parties on Monday for trial, yet apparently no trial was conducted. On July 20, 2011, the trial court sent a letter to appellant's trial counsel advising that the case was set for a jury trial on Monday, August 22, 2011. On August 3, 2011, appellant's trial counsel filed a motion to dismiss for denial of appellant's right to a speedy trial. This matter was heard by the trial court on August 16, 2011. After hearing the evidence, which consisted of appellant's testimony and the argument of counsel, the trial court denied the motion without comment, other than to simply pronounce, "The motion to dismiss is denied."

Appellant's trial commenced on August 22, 2011, and, after voir dire but prior to the State's case in chief, the trial court conducted a hearing outside the presence of the jury regarding the proposed outcry testimony of Becky Boone and Troyce Smedema. After listening to the testimony, the trial court ruled that each witness presented would

be allowed to testify. Following this hearing, the State's case in chief was presented through the testimony of the investigating detective, the victim, a polygraph examiner who interviewed appellant, the outcry witnesses, and the SANE nurse who examined the victim. Appellant testified in his own behalf. After hearing the evidence and the argument of counsel, the jury returned a verdict of guilty as to the three counts of aggravated sexual abuse of a child under the age of 14 years.[3] After hearing the evidence regarding punishment, the same jury assessed punishment at confinement in the ID-TDCJ for 99 years on each count. Pursuant to motion made by the State, the trial court ordered the sentences to run cumulatively.

Appellant gave notice of appeal, and the appeal is now before this Court under the docket equalization rules of the Texas Supreme Court.[4] Appellant contends that the trial court committed reversible error when it failed to grant his motion to dismiss the indictment for the failure to grant appellant a speedy trial. Further, appellant contends that the trial court abused its discretion when it allowed the evidence of both outcry witnesses to be presented to the jury. Disagreeing with appellant, we will affirm.

Right to a Speedy Trial

Standard of Review and Applicable Law

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial. Cantu v. State, 253 S.W.3d 273, 280 (Tex.Crim.App. 2008). The State of Texas recognizes this right through our Constitution and statutes. See

---

[3] The State waived count four of the indictment.

[4] See TEX. GOV'T CODE ANN. § 73.001 (West 2005).

5

TEX. CONST. art. 1, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005). This independent state right to a speedy trial is analyzed under the factors enumerated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See Zamorano v. State, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002) (*en banc*). We analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then balancing the factors outlined in Barker, 407 U.S. at 530: (1) length of delay, (2) reason for delay, (3) assertion of right, and (4) prejudice to the accused. Cantu, 253 S.W.3d at 280. A delay that is unreasonable enough to be considered presumptively prejudicial triggers the Barker analysis. Id. at 281; see Doggett v. United States, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

We review the trial court's ruling on a speedy trial issue under a bifurcated standard of review, applying "an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." Zamorano, 84 S.W.3d at 648. Review of the individual Barker factors necessarily involves factual determinations and legal conclusions, but "[t]he balancing test as a whole . . . is a purely legal question." Id. at 648 n.19 (quoting Johnson v. State, 954 S.W.2d 770, 771 (Tex.Crim.App. 1997)).

Analysis

(1) Extent of Delay

The record affirmatively establishes that appellant was arrested on October 18, 2005. Appellant's arrest triggers the beginning of our analysis. See Cantu, 253 S.W.3d at 280. Appellant's trial began on August 22, 2011. This is a delay of 5 years, 10

6

months, and 4 days. Authority supports the conclusion that this extended delay was so long as to be "presumptively prejudicial" and, therefore, serves to trigger our examination of the remaining Barker factors. See Shaw v. State, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003). The length of the delay weighs heavily in favor of a finding that appellant's right to a speedy trial was denied. Id.

(2) Reason for Delay

The State bears the burden of justifying the delay. See Emery v. State, 881 S.W.2d 702, 708 (Tex.Crim.App. 1994). We assign various weights to various reasons for the delay. See Dragoo v. State, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003); Zamorano, 84 S.W.3d at 649. When the record is silent regarding the reason for the delay, we presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. Dragoo, 96 S.W.3d at 314.

Regarding the reason for delay, appellant posits that it was all due to the efforts of the State to obtain a plea agreement. While there may be some truth in the contention, we note that the record reflects that on two occasions, early on in the proceedings, appellant asked that the case be reset for a later trial date. The first occasion was on January 17, 2006, during a hearing denominated a pre-trial hearing; appellant's counsel advised the trial court that he did not feel the parties would be able to get anything worked out. The trial court then stated, "Just asking for a pass to the February 17th docket?" To which counsel replied, "Yes, sir." Then at the pre-trial hearing on February 17, appellant's counsel stated that, "He wanted the case passed to the next docket." The trial court then set the case for the March 28th docket. On March

28, 2006, the trial court held what is denominated a "Status Conference." From the record, that hearing appears to have been held to determine if appellant was going to accept a plea offer from the State. Trial counsel and appellant were personally present and executed a form formally refusing the State's plea offer.

The balance of the record sheds some light on what transpired later in this case. After appellant and counsel had formally rejected the State's offer, the State's attorney spent some time explaining the reasons appellant should rethink his rejection of the plea offer. He explained there would never be a lower offer made and that refusal meant appellant would be subjecting himself to the possibility to four stacked sentences. Following this hearing, there were no more trial settings reflected in the record until the trial court sent a letter to appellant's counsel on September 3, 2008, advising counsel that the case had been set for a special pre-trial hearing on October 28. In the interim, appellant made bond on July 3, 2006, and pursuant to the special conditions of his bond, had appeared at the trial court at 1:30 p.m. on each of the first Fridays of the month, beginning on August 6, 2007.[5] At the October 28, 2008 special pre-trial hearing, the reporter's record reflects that the trial court again began the inquiry with a colloquy with the attorneys about whether they had "talked out" appellant's case. Both counsel agreed that there was no progress on resolution of the case whereupon the trial court set the case for trial on April 13. We construe that to mean April 13, 2009.

---

[5] The trial court's docket entry record reveals no entry for the first Friday in December 2007; however the record does not indicate any action by the trial court or the State regarding that apparent failure to appear as per the special condition of appellant's bond.

The April 13 trial date did not materialize. On May 1, 2009, appellant missed one of his scheduled reporting dates to the trial court. The following Monday, May 4, 2009, the State moved to have the bond declared insufficient, which the trial court did. Appellant was arrested on the capias issued by the trial court and was then incarcerated until October 23, 2009, when he made a second bond. The case then lingered until the trial court notified appellant's counsel that the matter was set for a jury trial on June 20, 2011.

A pre-trial hearing was held on June 17, and, at that hearing, the only inquiry by the trial court was whether the parties had resolved the case. Upon being told no, the trial court ended the hearing by advising appellant's counsel that he would see him Monday. However, Monday came, no trial was held, and the record does not reflect any reason for the trial not being conducted. On July 20, 2011, the trial court again sent a letter setting the case for trial. This time, the date the trial was to begin was August 22, 2011. This was the date the trial was, in fact, commenced.

At the hearing on appellant's motion to dismiss for failure to provide a speedy trial, the State contended that it never requested a continuance. The State implied that appellant was equally at fault because of the impasse in the plea negotiation process. This is, in essence, the same position that the State takes in its brief. What the State fails to consider is that the responsibility of getting appellant to trial is on the State and not the appellant. See Emery, 881 S.W.2d at 708. The fact that appellant rejected numerous opportunities to enter a negotiated plea in no way negates the State's negligence in bringing appellant to trial.

From this record, we deduce that appellant was responsible for some of the early delay. He requested two delays. The trial court's granting of these requests delayed the start of the trial until the March 28, 2006, trial date. From March 2006 until the trial commenced the delay must be placed squarely at the feet of the State. The record supports an inference that the State either was not ready to proceed with trial or felt that, by prolonging the period, appellant might become amenable to a plea offer. This latter inference is supported by the fact that until the final setting each pre-trial hearing began with an inquiry about whether the parties had reached an agreement. Based on the record, the reason for delay element of the Barker analysis is weighed significantly against the State. See Zamorano, 84 S.W.3d 649 (discussing the different weights assigned to different reasons that may have caused a delay).

(3) Assertion of Right

Appellant contends that he asserted his right to a speedy trial when he filed his motion for a speedy trial on February 2, 2006. However, our review of the record reveals that, while the motion was, in fact, filed as appellant asserts, the same motion was withdrawn in open court on March 17, 2006. Thereafter, appellant never filed another motion, made an oral request for a speedy trial, or otherwise objected in any discernable manner to the delays in trying his case until August 3, 2011, when he filed a motion to dismiss for failure to grant a speedy trial.

While it is true that appellant does not have a duty to bring himself to trial, he does have a responsibility to assert his right to a speedy trial. Cantu, 253 S.W.3d at 282.

10

When and how an appellant asserts his rights to a speedy trial is strongly related to the other Barker factors. Id. at 282-83. As explained in Cantu,

> The more serious the deprivation, the more likely a defendant is to complain. Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim. . . .

Id. at 283.

In our case, appellant first filed a motion for a speedy trial and then withdrew it. Subsequently, appellant sat mute and made no request for a speedy trial until shortly before the case was set for trial the final time. At that time, appellant requested not a speedy trial, but a dismissal. This leads to the inference that what appellant wanted was not a trial, speedy or otherwise, but rather a dismissal. See id. Therefore, this third prong of the Barker analysis weighs very heavily against appellant. See Dragoo, 96 S.W.3d at 315–16.

(4) Prejudice

The fourth Barker factor examines whether and to what extent the delay has prejudiced the appellant. Cantu, 253 S.W.3d at 285. We consider this factor in light of the interests the right to a speedy trial was designed to protect: (1) oppressive pretrial incarceration, (2) excessive anxiety over the pending charges, and (3) impairment of an accused's ability to present a defense. Barker, 407 U.S. at 532. Of these interests, the last is the most serious "because the inability of an [appellant] adequately to prepare his case skews the fairness of the entire system." Cantu, 253 S.W.3d at 285 (quoting Barker, 407 U.S. at 532).

11

The record reflects that appellant was incarcerated a total of 422 days, broken up into two increments. The first increment was from the date of arrest, October 18, 2005, until appellant made his initial bond on July 3, 2006, for a total of 258 days. The second stint of incarceration was from May 12, 2009, until October 23, 2009, for a total of 164 days. The State contends that we should not consider the second period of incarceration because it was of appellant's own making due to his failure to abide by a condition of his bond. While the failure to abide by the reporting condition of the bond was appellant's fault, the failure to try appellant after he was returned to jail lies with the State. See Emery, 881 S.W.2d at 708. Under the State's theory, we would excuse all delays in trying a criminal defendant under the rubric that it was the defendant's action that resulted in his incarceration. However, such is not the law. Accordingly, for purposes of analysis of the fourth Barker factor, prejudice against appellant, the length of pretrial incarceration would need to be weighed against the State.

As to the issue of excessive anxiety, the trial court heard the testimony of appellant regarding anxiety. Appellant testified about feeling anxious and suffering insomnia over the pending case. However, at the conclusion of the hearing, the trial court ruled against appellant. We must infer from this ruling that the trial court did not place much weight on appellant's testimony, and we defer to the trial court in that finding. Kelly v. State, 163 S.W.3d 722, 726-27 (Tex.Crim.App. 2005).

The trial court heard from appellant regarding the burden that reporting on the first Friday of each month, as a special condition of bond, placed upon him. According to appellant's testimony, he had to take off work to report. There was no specific testimony rendered about how much money this process cost appellant. However, the

12

clerk's record reflects that appellant reported to the trial court 70 times while on bond. The requirement was to report at 1:30 p.m. the first Friday of each month. What we know is that at 1:30 on the first Friday for 70 months, appellant was not at his job as a roofer. Unlike the appellant in Zamorano, appellant here did not testify with any specificity about whether he actually had work that he absented himself from on each of those occasions and the amount of wages, if any, that he lost. *Cf*. Zamorano, 84 S.W.3d at 653. This does, however, factor into the consideration of the level of anxiety that appellant was under while the charges were pending. Nevertheless, the lack of specificity lends only marginal credence to appellant's claim of prejudice.

Appellant also presented testimony that he was prejudiced because he did not know the location of his ex-wife. Additionally, appellant at least postulated that she might be helpful to his defense because the two were living together at the time the incidents in question took place. The record reveals that the State's attorney informed appellant, prior to trial, that his ex-wife was in the State's custody and the record further reflects appellant never availed himself of the opportunity to bench warrant her back to testify. Again, the trial court's view of appellant's testimony was clearly based upon those factors that are within the purview of the trial court, credibility and demeanor. Accordingly, we defer to the trial court in this determination. See Kelly, 163 S.W.3d at 726–27.

After reviewing the various components of the prejudice prong of the Barker analysis, we come to the following conclusions. The pre-trial incarceration was for more than one year. This we consider to be somewhat oppressive. Therefore, this would militate in favor of finding that appellant was prejudiced. As to the pre-trial anxiety

question, the trial court did not believe appellant, as demonstrated by its denial of the motion. However, this is somewhat offset by the record demonstrating the number of times appellant was required to appear before the trial court during the pendency of the case. The trial court found no actual demonstrative prejudice to appellant's ability to present his defense. Our review of the record further demonstrates that all of the witnesses testified about the events without much hesitation, and there were no times when it was apparent from the record that a witness had any trouble remembering the facts to which he or she testified. In summation, we find that appellant was not prejudiced by the delay, at least not to the point where we would hold that the prejudice factor alone was sufficient to order the dismissal of the charges against him.

After reviewing all of the Barker factors, we find that length of the delay weighs heavily in appellant's favor. The reason for the delay weighs significantly in the favor of the appellant. Further, while there was some prejudice shown, it was minimal *in toto*, and none of it went to appellant's ability to present a defense. As to appellant's assertion of his right to a speedy trial, the record reflected that appellant did not want a speedy trial. This is demonstrated by three specific references to the record. First, appellant initially sought that the case be reset for trial on two occasions, albeit early on in the proceedings. After having filed a motion for a speedy trial, appellant affirmatively requested that the motion be withdrawn. Finally, appellant then waited from March 17, 2006, until August 3, 2011 to again bring forth the concept of a speedy trial, and at that date appellant brought it forth in the context of a motion to dismiss. As the United States Supreme Court noted in Barker, "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied his constitutional right [to a

14

speedy trial] on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." 407 U.S. at 535. We echo the sentiments of the Barker court, in that the record before us is indicative of an appellant who did not want a speedy trial; rather he wanted a dismissal. Appellant's first issue is overruled.

## Outcry Witnesses

Appellant's second issue contends that the trial court committed reversible error when it allowed Troyce Smedema to testify about her conversation with the victim under the theory that Smedema was an outcry witness. According to appellant's theory, the true and only outcry witness was Becky Boone, the victim's foster parent and the very first person to whom the victim made any statement about the abuse.

Standard of Review and Applicable Law

We review a trial court's decision to admit evidence under an abuse of discretion standard. See Billodeau v. State, 277 S.W.3d 34, 39 (Tex.Crim.App. 2009). A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000).

Outcry testimony of a child victim is hearsay when offered for the truth of the matter asserted. See Dorado v. State, 843 S.W.2d 37, 38 (Tex.Crim.App. 1992) (*en banc) (per curiam)*. It may become admissible if it falls within an exception to the hearsay rule. Id. In cases involving certain children, the admissibility of hearsay outcry witness testimony is governed by article 38.072 of the Texas Code of Criminal Procedure. The statute provides that, when certain requirements regarding notice to the adverse party are met, testimony which might otherwise be considered hearsay is

15

exempted from the hearsay rules if the statements concern an offense against a child under the age of 14 and were statements of that child made about the offense to the first person over 18 years of age, other than the defendant. See TEX. CODE CRIM. PROC. ANN. art 38.072 (West Supp. 2012).[6]

Analysis

Initially, we must address the contention of the State that appellant failed to preserve his issue for appeal. According to the State, appellant failed to preserve his issue when he objected to Smedema's testimony at the pre-trial hearing as unreliable. This, according to the State, does not comport with the issue now raised on appeal. See Henderson v. State, 617 S.W.2d 697, 698 (Tex.Crim.App. [Panel Op.] 1981). Further, according to the State, when Smedema testified before the jury, appellant failed to object, therefore waiving any objection. Id. However, the State is in error about the failure of appellant to object when Smedema testified before the jury. During the direct examination of Smedema, the State began to elicit testimony regarding the outcry statement when appellant's trial counsel asserted an objection to hearsay. This is the complaint before the Court. Accordingly, we will address the merits of appellant's complaint.

The record reveals that the victim first discussed appellant's alleged sexual abuse with Boone. At the time of this discussion, the subject was limited to the first time the offense was committed by appellant. On that occasion, according to the victim,

---

[6] Appellant is not contending that the State did not give proper notice of the intent to use the outcry statement of both witnesses or a fair summary of those statements. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b).

appellant inserted his penis between her legs. However, when the victim discussed the assault with Smedema, the discussion was about multiple occasions, and the victim described appellant having sexual intercourse with her. The occasions described to Smedema were subsequent to that singular occasion described to Boone.

The law is clear that multiple outcry witnesses can testify about different instances of abuse committed by the appellant against the victim. See Patterson v. State, No. 02-10-0350-CR, 2012 Tex. App. LEXIS 473, at *12 (Tex.App.—Fort Worth Jan. 19, 2012, no pet.) (mem. op., not designated for publication) (citing Tear v. State, 74 S.W.3d 555, 559 (Tex.App.—Dallas 2002, pet. ref'd)). Our review of the record clearly demonstrates the two outcry witnesses were discussing different occasions of assault. Accordingly, the trial court did not abuse its discretion in overruling appellant's objection. Billodeau, 277 S.W.3d at 39. Appellant's second issue is overruled.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.